## Ham *v.* Ayres.

A testator bequeathed to the plaintiff the balance of certain property which was paid her by the defendant, one of his executors, by certain notes on which this suit was brought. The testator and the defendant were co-sureties for one Daniel Ham, on his administration bond on the estate of one George Ham, and, after the testator's death, the defendant was appointed administrator *de bonis non* of that estate. There was a balance unaccounted for in the hands of Daniel Ham at his decease. The defendant claimed the right to set off one half of this balance in the present suit, on the ground that the testator was liable for it with him, and as proof of the balance, he offered in evidence the decree of the Judge of Probate upon the defendant's account as administrator, *de bonis non* of George Ham. *Held*, that as the plaintiff was not a party to the settlement, was not notified, and had no opportunity to appear, and as there was no privity between her and the estate of George Ham, the decree was inadmissible against her.

If an executor pay a legacy, supposing there are assets when there are none, whether an action will lie to recover it back, *quære?*

ASSUMPSIT. The writ was dated November 21st, 1845. The declaration contained four counts ; the first was founded upon a note of the defendant for $8.30, dated January 1st, 1839, payable to the plaintiff with interest ; the second upon the defendant's note for $111.13, dated January 1st, 1839, payable to the plaintiff with interest ; the third alleged that the defendant, as executor of Oliver Ham, and having in his hands $111.13 of the estate of said Oliver, due and payable to the plaintiff, promised to pay the same to the plaintiff; the fourth count was $350, money had and received. The defendant pleaded the general issue and filed his set-off amounting to $151.15. The last item in the set-off was $97.09, for one half the amount paid by the defendant as joint surety with Oliver Ham upon the administration bond of Daniel Ham, administrator of George Ham. The case was referred to an Auditor, whose report was made a part of the case.

At the trial in court the plaintiff produced and proved the notes or agreements, copies of which are embraced in the Auditor's report. The defendant offered in evidence the report of the Auditor, to the admissibility of which, or so much thereof as embraces the recital of facts before the statement of the account between the parties, the plaintiff objected.

Ham *v.* Ayres.

The plaintiff also objected that the facts, recited in the Auditor's report, constituted no defence to the plaintiff's action.

Thereupon it was agreed by the parties, that a verdict be entered for the defendant, subject to be set aside and a verdict entered for the plaintiff, for such sum as the Court shall order, according to the opinion of the Court on the foregoing case.

The Auditor reported that the agreements produced at the hearing were in the words and figures following: — " $111.13, I promise to pay Miss Joanna Ham, and to no other person, one hundred and eleven dollars and thirteen cents, it being the balance due to her from the effects of her son Oliver Ham's estate, and I promise to pay interest for it.

Portsmouth, January 1st, 1839.

Witness, NATH'L J. HAM.

JOSEPH S. AYRES, Executor.

$8.30. I promise to pay Miss Joanna Ham, and no other person, eight dollars and thirty cents, with interest.

Portsmouth, January 1st, 1839.

Witness, NATH'L J. HAM.

JOSEPH S. AYRES.

The signatures to these agreements were admitted, and here the defendant rested her case.

The Auditor finds that all items in the set-off were duly proved with the exception of four, — the three under date of May 15, 1840, namely, one half cord of wood and trucking, $3.13, recording deed, 75 cts., bucket, 2s. 3d., broom, 1s. 6d., and the last item of $97.09. The items thus found proved, amount to the sum of $49.56, which should be allowed to the defendant.

The Auditor, on motion of the defendant, examined him under oath, and at the request of the parties, reports the following as the facts proved before him bearing upon the last item in the set-off of $97.09.

'Geo. Ham, the father of Daniel Ham and Oliver Ham, died in December, 1832. Daniel Ham proved the will of his father, as his executor, and gave the ordinary administration bond to the Judge of Probate, bearing date the 19th day of March,

35 *

1833. Jos. S. Ayres, and Oliver Ham were sureties for Daniel Ham upon this bond. Daniel Ham died in November, 1837, having settled one administration account of his father's estate. After the death of Daniel Ham, on the 13th of November, 1839, Jos. S. Ayres, having been appointed administrator *de bonis non* of George Ham's estate, settled in the Probate Court an account having the following heading: "Daniel Ham, executor, in account with the estate of George Ham, deceased, late of Portsmouth." In this account there is the following charge: "Balance in the hands of the executor at his decease, $194.08."

The admission of this account as evidence was objected to by the plaintiff, but ruled in by the Auditor for the purpose of this hearing, subject to the opinion of the Court.

Oliver Ham died in September, 1836, testate, having appointed said Jos. S. Ayres and Peter Wilson, his executors, who duly proved the will, and took upon themselves that trust. Said Ayres and Wilson settled their administration account as executors of Oliver Ham, January 8, 1839. Said account bears date November, 1838, and in it is the following credit to them as executors: 'Balance paid Mrs. Joanna Ham, the mother of said Oliver Ham, agreeably to his last will and testament, $151.70.'

It was proved that the aforesaid agreements from Ayres to Mrs. Ham were given in part payment of the sum of $151.70. It was also proved that Jos. S. Ayres, shortly after the death of Daniel Ham, liquidated and adjusted debts due from, and claims against the estate of George Ham; and paid, in so doing, a sum greater than $194, but Ayres being put upon oath as aforesaid, could not tell the precise sum he actually paid, and has no entry thereof upon any of his books of account.

The defendant claims that one half of the amount he thus paid, or at least one half of the amount found due from Daniel Ham, as executor to the estate of George Ham, upon the settlement of the foregoing account, is properly chargeable to the estate of Oliver Ham, he having been co-surety with the defendant upon the administration bond of said Daniel, and should be allowed in diminution of the balance that became payable to the mother of Oliver Ham, who is plaintiff in this suit.

The plaintiff claims that the defendant cannot set up these facts as a defence; that he is not in a situation or position that will enable him to take advantage of them. If the Court should be of opinion that, upon the foregoing statement, the plaintiff is entitled to recover upon the aforesaid agreements, and that the defendant cannot be allowed the last item in his set-off, then the Auditor states the accounts between the parties as follows:

'Agreement, or note of January 1, 1839, for $111.13
    do.     do.     do.     for    8.30
Interest to Sept. 1, 1846,    54.93

    $174.36

Pleas of set-off allowed, disregarding the
  last item,    $49.56
Interest from date of writ to Sept. 1846,  2.32
    51.88

Balance,    $122.48'

If the Court should be of opinion that, upon the facts and circumstances reported above, the defendant should be allowed the last item in his set-off, namely, the sum of $97.09, then the Auditor finds that there is nothing due from the defendant to the plaintiff."

*Hatch*, for the plaintiff. The facts, as they appear in the Auditor's report, are as follows: Jos. S. Ayres and Peter Wilson were executors of the will of Oliver Ham. They settled their account in the Probate Court, January 8, 1839, and were then allowed a credit of $151.70 for money paid to the plaintiff, as legatee of the deceased. They had not paid that sum in fact, but Ayres had given her for it his notes, on which this action is founded.

Oliver Ham and Daniel Ham, were sons of George Ham, who died in December, 1832. Daniel Ham took administration on his estate in March, 1833, and Oliver Ham and Ayres became sureties on his administration bond. Daniel Ham settled one account of his adminstration, and died in 1837. In November,

1839, Ayres having become administrator *de bonis non* on George Ham's estate, settled the account of Daniel Ham, executor of George Ham's estate, by which it appeared that there was due to the estate, from Daniel Ham, $194.18. Shortly after the decease of Daniel Ham, (1837,) Ayres paid sundry claims, &c., against the estate of George Ham, to the amount of $194 and upwards, but what are the particular sums paid he cannot tell. He now claims that at least half the sum he has so paid shall be deducted from the notes he gave the plaintiff, on account of her legacy from Oliver Ham's estate. He has settled no account of his own administration of George Ham's estate, neither have he and Wilson settled any second account of administering Oliver Ham's estate.

Under these circumstances the defendant is not entitled to be allowed in this suit, by way of set-off, any payments he may have made on account of George Ham's estate.

I. Because the debts are not *mutual* between the parties in this account. Rev. Stat. chap. 187, § 4. The claim of the defendant for any money he may have paid as co-surety with Oliver Ham, is a claim against Oliver Ham's estate, and not against the plaintiff. It is true that Ayres is one of the executors of Oliver Ham's estate, but he cannot set off, in a suit against himself, a demand due to Oliver Ham's estate. *Colley* v. *Colley*, 2 N. H. Rep. 419, 479. And he is co-executor with Peter Wilson, and if otherwise entitled could not set-off against the plaintiff's claim a demand due to himself and another. Besides, as will be hereafter noticed, the claim alleged in the set-off is barred by the Statute of Limitations.

II. Ayres cannot defend against the notes on which this suit is founded, on the ground of a failure of consideration. They were given in consideration of Mrs. Ham's receipt, acknowledging that she had received of the defendant and Peter Wilson, executors of Oliver Ham, $151.70, and that amount was credited and allowed in their administration account, and still stands so credited. Their obligation to pay the money, for which these notes were given, is established by a decree of the Judge of Probate, which remains unreversed, and, but for the giving of the notes in suit, would of itself be a good cause of action.

Now if the defendant is permitted to avoid his notes to the plaintiff, on the ground that he has paid money as co-surety of Oliver Ham, there will remain nothing to prevent him from being again allowed for the same money when he settles his final account as executor of Oliver Ham. And if the plaintiff allows this defence, she will have no claim against Oliver Ham's estate on account of it; nor can she maintain an action against the other legatees or the heirs of Oliver Ham for contribution.

If the legacy to the plaintiff had been paid in cash by Oliver Ham's executors, to Mrs. Ham, the defendant could not *alone* have maintained an action to recover it back as paid by mistake. Nor could the executors of Oliver Ham have recovered of the plaintiff *alone* the sums they might afterwards have paid on Oliver's account. Their claim would have been against all the legatees, or the heirs of Oliver Ham, and not against the plaintiff singly. To permit the defendant now to withhold payment of his notes, is to throw upon the plaintiff the whole burden, which, for any thing that appears, she should bear jointly with others. And it is not apparent that the executors of Oliver Ham have no assets of the estate in their possession. If they have, all show of foundation to this defence fails.

If, in settling their account of administration in 1839, the executors of Oliver Ham had simply charged themselves with $151.70 due to the plaintiff as a legacy, but not yet paid, the plaintiff could have maintained an action to recover it. And the defence now set up would have been no answer to such an action. And the admission of assets upon the record of the Probate Court would have been conclusive. In other words, the executors of Oliver Ham must have settled a new account of administration, and procured the allowance of the payment alleged to have been made on account of Daniel Ham's bond, and showed that they had no assets to meet those payments before the defence could be available to them.

We arrive, then, at the proposition of the plaintiff, that the defendant is in no position to avail himself of his defence, if it were otherwise well founded. He must first settle a new account of the administration of Oliver Ham's estate, and establish his

claim against that estate by the decree of the Judge of Probate. Then his remedy would be an action of both executors to recover of the plaintiff her proportion of the deficit, if any shall exist.

But the defendant is in no position to allege that he has a valid claim against the estate of Oliver Ham. He was administrator *de bonis non* of George Ham's estate, and he says he has paid about $200 of claims against that estate, though he is unable to produce any account or vouchers of his payments. Now, how stands the account between Ayers and George Ham's estate? what assets of the estate has he received? from what funds has he paid the $200? his own or George Ham's? Was the money paid upon legal demands against that estate? for administration had been taken on it five years before, and all demands must have been barred before the payment. These things can only appear as the result of a settlement of his administration account in the Probate Court, which he has not attempted. It is certain that he has paid no money on the bond where he was co-surety with Oliver Ham, nor has he procured the allowance of any claim against Oliver Ham's estate on that account.

III. But another suggestion is conclusive of the whole case. The auditor finds that the $194 and upwards was paid by Ayers on account of George Ham's estate, " shortly after the death of Daniel Ham." It appears that Daniel Ham died in Nov., 1837. Ayers and Wilson settled their account as executors of Oliver Ham, Jan. 8, 1839. Now the payments made by Ayers as co-surety with Oliver Ham, if any were lawfully made, might have been included in that account. The presumption is that they were so included. If not, he, knowing his claim on account of the bond, confessed a balance of $151.70, due to the plaintiff, in his hands, and paid it to her by the notes now in suit. He has no claim then to defend against those notes on the ground that they were given by mistake, nor can he deny the consideration of them, which he deliberately admitted, knowing all the facts.

IV. It is not possible to deny that the defendant's notes were founded on good consideration, namely, the credit he was al-

lowed in the Probate Court. The defence, if successful, must stand upon the ground of an action to recover back money paid by mistake. But before the date of the plaintiff's writ, Nov. 12, 1845, the right of the defendant and Wilson to recover back the money was barred by the statute of limitations; for his alleged payments were made in 1837.

V. But the whole defence stands upon the recital in the report of the Auditor, and that was not admissible in evidence for two reasons. 1st. Because the whole recital was improper, the duty of the Auditor being only to state the accounts between the parties. Rev. Stat. chap. 189, § 1. He has no right either to report circumstances, or to give reasons for his conclusions. He must state the account merely, and that statement alone is admissible in evidence. 2d. The Auditor improperly examined the defendant as a witness in chief upon subjects not matters of account, but tending to show a defence founded upon considerations of a nature entirely different. The whole statement of facts in the report is founded on the defendant's testimony. This is a wide departure from the common law, which neither the statute nor the decisions of our courts authorize. *Fuller* v. *Little*, 7 N. H. Rep. 534; *Mann* v. *Locke*, 11 N. H. Rep. 246.

VI. Behind all the objections taken by the plaintiff to the defence set up by the defendant, there are considerations which render the right of the plaintiff to recover, perfectly clear. The defence rests upon the allegation that the defendant has paid $194 and upwards, as co-surety with Oliver Ham, upon an administration bond. Now, the facts stated in the Auditor's report, (and they are founded solely upon the testimony of the defendant himself,) are not such as would warrant a jury in finding that the payment was in fact made. Laying aside the fact, that when the payment is said to have been made, Ayers had funds of Oliver Ham in his hands, from which he might have reimbursed himself, and that in settling his account of Oliver Ham's estate he either was allowed for that payment or set up no claim on that account, and that he suffered more than six years to elapse without setting up any claim on account of the alleged payment, he gives no such account of the payment as renders

it even probable that it was made. In what court of justice is a man to be heard to say : " as administrator of an estate, and as co-surety with a deceased party, of whose will I was also executor, I paid upwards of $194, but I cannot tell the precise sum I actually paid ; I have no entry thereof in any book of account, and I cannot or do not tell to whom I paid it, nor whether from my own funds or from the funds of one of the deceased parties."

The agreement in this case is substantially that a verdict shall be entered according to the opinion of the Court upon the evidence in the case. The Auditor's report being inadmissible, the plaintiff is entitled to judgment for the amount of her two notes and interest ; but she is content to take the same with the deduction of $49.56, found by the Auditor due on the set-off.

*Hackett* for the defendant. The plaintiff makes two objections to the verdict in favor of the defendant.

1. That "so much of the Auditor's report as embraces a recital of the facts before the statement of the accounts between the parties, is inadmissible."

It must be obvious to the Court that if the facts had not been stated, the question in dispute could not have been raised. It is no part of the duty of the auditor to report evidence, but he is appointed for the purpose of trying the facts. If an Auditor may not report the facts, how are the Court to decide the law ? If he may not report the facts, what may he report ? If he reports that A owes B $100, he reports a fact. If the law, authorizing the appointment of an Auditor, did not contemplate a report of the facts, why is the report made evidence to the jury ? Upon general principles the plaintiff could not sustain his first objection.

But in this particular case, the Auditor " reported the facts proved before him at the request of the parties." The plaintiff having joined with the defendant in requesting the Auditor to report the facts to the Court, he has waived any objection to the recital of the facts which he requested to have reported. This recital of facts was reported to the Court at his request, and he cannot now say that the facts so reported are not competent to be submitted to the jury.

Ham *v.* Ayers.

The Court have settled the plaintiff's first objection in 14 N. H. Rep. 427, where they say that facts reported by an Auditor, in a case like this, are regarded as a case stated, and considered accordingly.

2. The second objection of the plaintiff is, " that the facts recited in the Auditor's Report constitute no defence to the plaintiff's action."

We are not now called upon to consider any alleged facts, not stated in the Auditor's Report, or to answer any argument based upon such supposed facts.

The facts reported by the Auditor having resulted in a verdict for the defendant, the question is, whether they in law constitute an answer to the plaintiff's claim?

The notes in suit were given by the defendant for what was supposed, on the 12th January, 1839, to be the balance due the plaintiff, as residuary legatee of her son, Oliver Ham. They are made payable to the plaintiff, and to no other person, and do not import value received, but one specifies said supposed balance as the consideration, and the case finds that both were given for said supposed balance. The balance was then believed to be $151.70 — $32.27 of which was then paid in cash. $49.50 was soon after paid. $81.77 = $151.70 — 81.77 = $69.93. This was January 8, 1839. At this time the defalcation of Daniel Ham, for whom the defendant and his testator, Oliver Ham, were sureties, was not known. But it turned out after the settlement of the first account of administration upon the estate of Oliver Ham, and the giving the notes in suit, that there was a debt of $97.04 against the estate of Oliver Ham. This appeared November 13, 1839, upon the settlement of Daniel Ham's account, as administrator of George Ham, ten months after giving the notes. This debt arose, as will appear from the Auditor's Report, from the fact that Oliver Ham and this defendant were joint sureties on Daniel Ham's administration bond, and that there was a defalcation of $194.08, made by Daniel, the whole of which this defendant has paid.

This defendant now claims that as these notes or agreements were given under a mutual mistake as to the actual facts, and

the real balance, that half of said payment of the $194.08, which is $97.04, shall be allowed in diminution of the balance claimed by the plaintiff, as residuary legatee of her son, Oliver Ham. That as the liability had been discovered and paid since the notes were given, and as the notes were intended by both parties to be for the real balance, it is both legal and equitable so to allow said $97.04. The case further finds that the defendant has already paid to the Auditors and legatees of Oliver Ham $29.16 more than he has received as executor.

Now, if the defendant, instead of giving the notes, had paid the cash for the supposed balance, he could have recovered it back, or so much of it as he subsequently paid to discharge Oliver Ham's half of Daniel's defalcation. Or if his account in the Probate Court had shown this balance of $151.70 due the plaintiff, as residuary legatee of Oliver, the payment of $81.77 to the plaintiff, and $97.04 for Oliver's half of Daniel's defalcation = $178.81, would more than satisfy the balance. The giving such memoranda as this suit is brought upon, under these circumstances, neither enlarges the remedies of the plaintiff or lessens the rights of the defendant. They are given upon no new consideration, and create no new liabilities. They are simply a recognition of a preëxisting liability to pay the balance according to his duty, and the payment of the balance according to the legal liabilities of the executors of Oliver's estate, is a fulfilment of that contract.

The plaintiff must have taken the same view of the matter, for the notes were barred by the Statute of Limitations when the suit was brought, and she sued as devisee for the balance in the hands of the defendant, as executor, belonging to her. The defendant supposed, that, under these circumstances, the plea of the Statute of Limitations would not protect him. He relied upon payments made according to his duty. The suit is, in effect, to recover the balance in the defendant's hands, as executor, and the case shows that he has overpaid it.

As to the notes, whether they are regarded as having been given under a mistake, or for a consideration which has partially failed, or as an agreement to pay the balance legally due the

plaintiff, or according to the legal duty of the defendant, the result is the same. Either view answers and defeats the plaintiff's suit.

GILCHRIST, C. J. The defendant was surety with Oliver Ham upon the administration bond of Daniel Ham, the administrator of George Ham. The defendant was also one of the executors of the will of Oliver Ham, who therein directed the balance of certain property to be paid to his mother, the plaintiff. This balance amounted to the sum of $151.70.

Daniel Ham died, and the defendant was appointed administrator *de bonis non* of the estate of George Ham.

In the defendant's account, as executor of the will of Oliver Ham, the executors credited themselves under the date of November, 1838, with the balance paid the plaintiff, $151.70.

On the 13th of November, 1839, the defendant settled his account as administrator *de bonis non* of the estate of George Ham. He now produces this account in evidence, and it appears from it that there was in the hands of Daniel Ham, the sum of $194.08. The entry was thus, "Balance in the hands of the executor, at his decease, $194.08. This is the only evidence of the balance.

The defendant shows, that he, as one of the sureties of Daniel Ham, has paid more than the sum of $194,08.

The balance of $151.70 was paid to the plaintiff, by the defendant's giving her certain notes therefor, on which this suit is brought, and he claims the right to set off one half the sum of $194.08, inasmuch as Oliver Ham, the plaintiff's testator, was liable for one half of it.

The decree of the Court of Probate, on the account of the defendant as administrator *de bonis non*, binds parties and privies like any other judgment. It is now offered as evidence that Daniel Ham, on whose bond Oliver and the defendant were co-sureties, had in his hands the sum of $194.08. But the plaintiff was not a party nor privy to this settlement, was not notified, and had no opportunity to appear, and as to her it is *res inter alios acta*. It consequently is not admissible in evidence against her.

If the defendant could prove by competent evidence, that there was in the hands of Daniel Ham, for whom he was co-surety with Oliver, a balance which Oliver was bound to pay, and which he had paid himself, the question then might perhaps arise, whether having paid a legacy, supposing there was estate, when in fact there was none, an action would or would not lie to recover it back.

But upon the present facts, the defendant cannot set off the sum of $97.04, one half the sum of $194.08, and upon the report there must be

*Judgment for the plaintiff.*